# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RONALD E. STARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:10-CV-00782-NKL |
| | ) |
| MICHAEL ASTRUE, | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

Before the Court is Plaintiff Ronald Stark's ("Stark") Social Security Complaint [Doc. # 1]. For the following reasons, the Court reverses and remands to the Administrative Law Judge ("ALJ") for correction of error.

**I.    Background**[1]

This suit involves Stark's application for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, et seq. On August 27, 2009, following a hearing, an ALJ found that Stark was not under a "disability" as defined in the Act. Stark appeals from that decision.

**A.    Medical Evidence**

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

On October 6, 2006, Shaun Holden, M.D., diagnosed cervical radicular pain and numbness of the 4th and 5th digits with a 5 year history. An October 11, 2006 MRI demonstrated severe degenerative spondylosis from C4-C5 through C6-C7. On October 31, 2006, myelogram demonstrated that Stark had moderate spinal stenosis at C7-T1 and C6-C7; and compression of the nerve root by disc or osteophyte. A CT scan of the cervical spine showed C7-T1 and C4-C5 disc herniation and C5-C6 and C6-C7 disc bulging with osteophytic spurring. On February 15, 2007, Stark underwent a C6 to T1 laminectomy and fusion surgery.

March 28, 2007 x-rays of the cervical spine showed a stable postoperative appearance after lower cervical spine laminectomy and posterior fusion. On August 10, 2007, Stark was six-months post operative of the cervical decompression and fusion. Surgeon William Rosenberg, M.D., found that Stark's radicular and myelopathic symptoms remained resolved, but he had muscular axial pain in the neck region.

On April 11, 2007, a state Disability Determination Service medical consultant reviewed the medical evidence of record and determined that Stark could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently and stand, walk and sit about 6 hours in an 8-hour workday. Stark was limited to occasionally climbing ladders and scaffolds, and occasionally stooping, crouching and reaching all directions, including overhead.

On June 15, 2007, Stark reported pain in his lower back, right hip and mid-thoracic region to his chiropractor, Chace Carpenter, D.C.

On February 16, 2009, Dr. Holden diagnosed cervical disc disease and peripheral neuropathy. Dr. Holden noted Stark was drinking 2-3 alcohol drinks per day. Foot x-rays showed mild first MTP joint arthrosis in both feet and an old, healed fracture of the left fifth metatarsal. An April 6, 2009 CT of the cervical spine demonstrated postoperative changes, spurring at C4-C5, fusion at C6-C7 and C7-T1, and mild neural foraminal stenosis.

In November 2006, Stark underwent liver function tests. The doctor noted that Stark reported drinking 3 to 4 mixed drinks daily for numerous years. Faisal S. Jafri, M.D., diagnosed elevated liver function tests highly suspicious for alcoholic liver disease.

**B.     Administrative Hearing**

Stark testified at his administrative hearing on July 29, 2009. Stark testified that he did not smoke or use any type of recreational drugs, and that he would have a drink or two a day.

Upon questioning by counsel, Stark testified that his main medical problem was in his back and lower neck, having had surgery on that in February 2007. He further testified that he couldn't lift very much and had a lot of pain all the time. He stated that his level of pain was at a seven or eight without medication and a four with his medication. He testified that his medications bothered his stomach and made him drowsy. He said that he had difficulty concentrating and remembering things, and that he had to lie down and rest during the day.

Stark admitted under questioning by the ALJ that his doctors had advised him to limit his drinking.

Vocation expert Denise Waddell then testified that Stark had worked in the past as a heavy equipment operator and a fuel panel operator. Ms. Waddell testified that if a person could balance, bend or stoop, kneel and crouch on a frequent basis, then that person could still be a fuel panel operator. If a person could do all of that only occasionally, Ms. Waddell testified that the person could still be a fuel panel operator. When the ALJ posed the same hypothetical but limited the individual to lifting no more than ten pounds occasionally and less than ten pounds frequently, Ms. Waddell said that the person would not be able to perform any of Stark's past work and that there would be no transferable skills.

### C.  The ALJ's Decision

The ALJ found that Stark had degenerative disc disease and alcohol abuse, but did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. 20 C.F.R. § 404.1520(d) (2011)

The ALJ found that Stark retained the Residual Functional Capacity ("RFC") to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, and that Stark could stand, walk and sit about 6 hours in an 8 hour workday. The ALJ determined that Stark could occasionally climb stairs, ladders, ropes, and scaffolds, occasionally balance, bend, stoop, crouch, kneel, crawl, and reach above the head. Finally, the ALJ determined that Stark would have limited concentration due to alcohol abuse.

The ALJ found that Stark's impairments prevented him from doing his past relevant work as a fuel panel operator or heavy equipment operator, and that his acquired job skills

do not transfer to other occupations within the RFC as defined above. The ALJ determined that there are no jobs that exist in significant numbers in the national economy that Stark can perform. However, the ALJ found that if Stark stopped the substance abuse, he would be able to perform his past work as a fuel panel operator. Because Stark would not be disabled within the meaning of the Social Security Act if he stopped the substance abuse, the ALJ found that Stark was not disabled.

## II. Discussion

### A. Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### B. Whether the ALJ's Residual Functional Capacity Assessment was Based on Medical Evidence

On this appeal, Stark argues that the ALJ gave improper weight to the opinion of a Single Decision Maker ("SDM"), mistakenly believing that the SDM was providing an

5

expert medical opinion. The administration defines "acceptable medical sources" as (1) licensed physicians, (2) licensed or certified psychologists, (3) licensed optometrists, (4) licensed podiatrists, and (5) qualified speech-language pathologists. 20 C.F.R. 404.1513(a)(1)-(5) (2011). Only acceptable medical sources can give medical opinions or establish the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2011). It is legal error for an ALJ to give weight to an opinion of a lay person as being from a medical consultant. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007).

Here, the ALJ writes:

> On April 11, 2007 a state Disability Determination Service medical consultant reviewed the medical evidence of record and determined that the claimant could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently and stand, walk and sit about 6 hours in an 8-hour workday. The claimant was limited to occasionally climbing ladders and scaffolds, and occasionally stooping, crouching and reaching all directions, including overhead. The claimant should avoid exposure to wetness, vibration and hazards such as machinery and heights (Exhibit 13F).

[Doc. 3, Ex. 3, at 15 (Decision of ALJ)]. The ALJ goes on to explain the weight given to the opinion evidence provided by the SDM:

> As for opinion evidence, the residual function capacity is supported by the state agency medical consultant opinion. The opinions, evaluations, and conclusions of the state agency medical consultants are expert opinion evidence of a non-examining source. State agency medical and psychological consultants are highly qualified physicians and psychologists who are expert in the evaluation of the medical issues in disability claims under the Social Security Act. For this reason the undersigned is required to give these opinions appropriate consideration.

6

*Id*. at 15.

The Commissioner's brief concedes, "that the ALJ mistakenly referred to the SDM as a medical consultant." [Doc. # 12, at 5]. Based on the Commissioner's concession and the ALJ's admission about the weight he gave the conclusions of the lay person, it is clear that the ALJ committed legal error. *See Dewey*, 509 F.3d at 449 . Defendant argues that the ALJ's mistake is harmless error. However, the RFC is a medical question, and some medical evidence must support the determination. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). No other acceptable medical opinion evidence is cited as support by the ALJ.

The ALJ's determination of Stark's RFC was not based upon an acceptable medical source, and this Court cannot say that the ALJ would inevitably have reached the same result if he had understood that the RFC Assessment had not been completed by a qualified medical consultant. *See Dewey*, 509 F.3d at 449 (remand for rehearing because ALJ mistakenly believed RFC had been authored by physician or other qualified medical consultant).

## III. Conclusion

Accordingly, it is hereby ORDERED that the decision of the Commissioner is REVERSED and the matter is REMANDED for a proper RFC to be determined, consistent with this Court's order.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: July 14, 2011
Jefferson City, Missouri